Erin Rose Ronstadt, SBN 028362
Clayton Richards, SBN 029054
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
clayton@ronstadtlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Cosentino,<br><br>          Plaintiff,<br><br>v.<br><br>The Salt River Project Agricultural Improvement and Power District and the Salt River Valley Water Users' Association Insured Health & Life Benefit Plan, an ERISA benefit plan; the Hartford Life and Accident Insurance Company, a plan fiduciary; and the Salt River Project Agricultural Improvement and Power District, the plan administrator,<br><br>          Defendants. | No.<br><br>**COMPLAINT** |

For his claims against the Salt River Project Agricultural Improvement and Power District and the Salt River Valley Water Users' Association Insured Health & Life Benefit Plan (the "Plan"), Hartford Life and Accident Insurance Company ("Hartford"), and the Salt River Project Agricultural Improvement and Power District ("SRP," or the "Plan Administrator") (collectively, "Defendants"), Plaintiff Frank Cosentino ("Mr. Cosentino" or "Plaintiff") alleges as follows:

## Jurisdiction, Venue, And Parties

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. The Plan is a purported ERISA benefit plan established and maintained by the Salt River Valley Water Users' Association (the "Association") for the benefit of its

-1-

employees.

3. The Association is the Plan Sponsor, but SRP is the Plan Administrator, a plan fiduciary, and employer.

4. Hartford is a plan fiduciary.

5. Under the Plan, Hartford fully insured employees of the Association for long-term disability ("LTD") benefits pursuant to Policy Number GLT-402951 ("the LTD Policy").

6. Under the Plan, Hartford fully insured employees of the Association for life insurance waiver of premium ("LWOP") benefits pursuant to Policy Number GL-402951 ("the LWOP Policy").

7. Mr. Cosentino was a participant and beneficiary of the Plan as an employee of the Association.

8. At the time Mr. Cosentino sought long-term disability ("LTD") and life insurance waiver of premium ("LWOP") benefits under the Plan, Hartford administered claims for SRP under the Plan, acted on behalf of the Plan, and acted as an agent of SRP and the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

9. Mr. Cosentino currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

10. The Plan and SRP have their principal places of business in the State of Arizona.

11. Hartford has its principal place of business in the State of Connecticut.

12. Defendants Hartford and SRP are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13. This Court has jurisdiction over the subject matter of this action under ERISA,

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## General Allegations

15. On December 19, 2016, Mr. Cosentino and his children were rear-ended in their vehicle, while at a dead stop in freeway traffic, by a car travelling 55 miles-per-hour.

16. The accident shattered Mr. Cosentino's left leg.

17. Mr. Cosentino's injury touched off a years-long process to relieve his symptoms resulting from his chronic, debilitating impairments.

18. Mr. Cosentino's treatment providers diagnosed him with Complex Regional Pain Syndrome II—a disorder characterized by significant, prolonged pain and inflammation in the body after a nerve trauma.

19. Mr. Cosentino also suffers from motor neuropathy, left foot drop, and lumbar and cervical spinal pain as a result of this accident.

20. Throughout his treatment, Mr. Cosentino repeatedly exhibited clinical signs consistent with these conditions, including reduced strength in his left lower extremity, swelling, inflammation, positive straight-leg raising maneuvers, and decreased range of motion.

21. These conditions cause Mr. Cosentinto's Disability under the Plan.

### Plan Language

22. Under the Plan, an individual qualifies for Disability benefits if he is "prevented from performing one or more of the Essential Duties of: 1) [his] Occupation during the Elimination Period; 2) [his] Occupation for the 12 months following the Elimination Period, and as a result [his] Current Monthly Earnings are less than 80% of [his] Pre-Disability Earnings; and after that, Any Occupation."

-3-

23. Under the Plan, "Essential Duties" are defined as duties that "[are] substantial, not incidental; 2) []fundamental or inherent to the occupation and 3) cannot be reasonably omitted or changed."

24. "Your Occupation" is defined under the policy, as "Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location."

25. "Any Occupation" is defined as "any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of: 1) the product of Your Pre-disability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit."

### Mr. Cosentino's LTD and LWOP Benefits

26. SRP hired Mr. Cosentino as a Facilities Construction Project Manager/Project Leader in April 2012.

27. This job required liaising with outside engineers, architects, and construction professionals; administering cost policies and rate schedules; reviewing cost estimates; conducting training; investigating and resolving customers' electric service problems; assisting with the design and construction of distribution systems; serving as a technical consultant for the design team; arbitrating conflicts; providing a point of contact for scheduled power outages; and reviewing customers' "design data" to establish the applicable SRP service.

28. Mr. Cosentino's most recent Annual Performance Reviews reflect he was designated as either a "valued" or "exceptional" contributor in all of his Performance Dimensions.

29. Mr. Cosentino last worked on December 14, 2017.

30. Mr. Cosentino left work due to his Disabling medical conditions.

31. In an Attending Physician's Statement—Progress Report dated January 24, 2018, Mr. Cosentino's treating physician's assistant noted Mr. Cosentino suffered from chronic bilateral low back, left leg, knee, ankle, and calf pain, and swelling in the left foot.

32. The physician's assistant noted Mr. Cosentinto could only sit or stand for one hour in a day "intermittently with standard breaks," and that he could not walk.

33. In a letter dated April 10, 2018, after paying his short-term disability benefits until the maximum benefit period, Hartford approved Mr. Cosentino's LTD claim.

34. Mr. Cosentino's LTD benefits became payable effective March 21, 2018, making the change in definition of Disability applicable effective March 21, 2019.

35. Mr. Consentino's treating providers continued to support his ongoing Disability after Hartford approved his LTD.

36. In November 2018, for instance, physician's assistant Jodi Palmer ("Ms. Palmer") noted Mr. Cosentino's condition was "unchanged."

37. In February 2019, Hartford's Behavioral Health Case Manager, Elysa Peterson, wrote a letter to Ms. Palmer stating the physical restrictions Ms. Palmer assigned to Mr. Cosentino "appear[ed] excessive," and inquired whether Mr. Cosentino's physical restrictions had changed since November 2018.

38. Ms. Palmer answered in writing that Mr. Cosentino's restrictions had not changed, and clarified, "His complex regional pain syndrome type 2 of [the] left lower extremity has lead [*sic*] to secondary issues with bilateral shoulder pain, back pain, [and] muscle spasm[s]," which would preclude him from performing sedentary work.

39. Ms. Palmer stated she had *not* based her opinions solely on Mr. Cosentino's subjective complaints and listed the objective examination findings which supported the physical restrictions she assigned.

40. With seemingly no regard for this opinion, Hartford referred Mr. Cosentino's claim to a notorious insurance company consultant and examiner, Dr. Brian McCrary.

41. Dr. McCrary has performed examinations at the behest of long-term disability insurance carriers for many years.

42. Upon information and belief, Dr. McCrary is a preferred source for these examinations because he consistently writes reports adverse to the interests of disability claimants.

43. Upon information and belief, in these reports, Dr. McCrary often accuses disability claimants of lying, malingering, or other deceitful behavior.

44. Hartford has a custom of using Dr. McCrary to generate evidence supporting the termination of LTD claims.

45. Mr. Cosentino was unaware of this and, on April 9, 2019, he attended an independent medical examination ("IME") with Dr. McCrary.

46. Despite Mr. Cosentino's report that "[i]t feels like a truck ran over [his] foot[,]" and despite observing temperature changes in Mr. Cosentino's left foot consistent with his diagnosis, Dr. McCrary found Mr. Cosentino could stand and walk for up to four hours per day for one-hour intervals, and that he could lift objects at table height and weighing up to 20 pounds "on a frequent basis," or up to two-thirds of a workday.

47. Unsurprisingly, on May 17, 2019, Hartford issued a letter terminating Mr. Cosentino's LTD benefits claim effective May 18, 2019 (the "Denial").

48. In the Denial, Hartford completely relied on Dr. McCrary's opinion to the exclusion of other compelling, objective evidence and the opinions of Mr. Cosentino's treating providers.

49. In the Denial, for instance, Hartford acknowledged and summarily disregarded the recent opinion of Mr. Cosentino's treating provider, Ms. Palmer, who issued a statement supportive of Mr. Cosentino's LTD claim.

50. On January 13, 2020, Mr. Cosentino appealed, with the assistance of counsel, the LTD Denial and other purported denials regarding his life insurance waiver of premium ("LWOP") benefits by Hartford (the "Appeal").

51. With the Appeal, Mr. Cosentino submitted a report of an independent functional capacity evaluation ("FCE") performed by an outside expert.

52. Over the course of an 18-page report and 7-page letter summarizing his findings, the functional capacity evaluator described the objective clinical signs he observed, the testing he administered, the medical records he reviewed, and expounded the evidentiary basis for his conclusions.

53. The functional capacity evaluator concluded Mr. Cosentino "is UNABLE to perform the physical demands or material duties of his past work or any other work including other types of SEDENTARY work on a regular and consistent basis."

54. The functional capacity evaluator noted Mr. Cosentino "gave full and consistent effort," that he exhibited no inconsistencies during testing, and that he was "highly credible."

55. The functional capacity evaluator opined Dr. McCrary's assessment was "incomplete and inaccurate," and that Dr. McCrary "seemingly ignored numerous objective signs and well documented symptoms that are supported by Mr. Cosentino's longstanding treatment team."

56. On February 20, 2020, Mr. Cosentino's representative submitted additional evidence including updated medical records, a statement from Mr. Cosentino's treating pain management physician expressing agreement with the results of the independent FCE, and a copy of the LTD Policy.

57. In that letter, Mr. Cosentino's representative noted Hartford made misrepresentations regarding his eligibility for life insurance waiver of premium benefits and asked that Hartford approve life insurance coverage pursuant to these provisions in the life insurance policy.

58. In a responsive letter dated February 26, 2020, Hartford insisted that despite the clear language of the life insurance policy, it was not responsible for administering LWOP benefit.

59. In a letter dated March 9, 2020, Hartford upheld its prior adverse LTD benefit determination (the "Final Denial").

60. In the Final Denial, Hartford rejected the independent FCE results and relied upon the opinion of a non-examining peer review consultant who opined Mr. Cosentino had no physical restrictions and limitations that would preclude work.

61. In the Final Denial, Hartford also noted the Social Security Administration ("SSA") had denied Mr. Cosentino's application for Social Security Disability ("SSDI") benefits during an early administrative review, and that "the denial of benefits by the [SSA] would indicate that the SSA also finds that Mr. Cosentino is not precluded from performing any and all work."

62. On July 31, 2020, however, an SSA Administrative Law Judge ("ALJ") who presided over a hearing on Mr. Cosentino's application for SSDI benefits issued a fully favorable decision awarding those benefits.

63. In reviewing and discussing the evidence before the SSA, the ALJ assigned "significant weight" to the independent FCE findings Hartford previously ignored.

64. On September 1, 2020, Mr. Cosentino's representative notified Hartford in writing that the SSA had awarded Mr. Cosentino's claim for SSDI benefits and, in light of the SSA's award constituting additional evidence of Mr. Cosentino's ongoing Disability, that Hartford should re-open Mr. Cosentino's LTD and LWOP claims.

65. Mr. Cosentino's representative attached the ALJ's fully-favorable SSDI benefits award to the September 1, 2020 letter.

66. In a letter issued just one week later on September 8, 2020, Hartford declined to reopen Mr. Cosentino's claims despite this new, compelling evidence, and despite the fact it would not be prejudiced by doing so.

67. Mr. Cosentino has now exhausted any administrative remedies required by the Plan and timely files this lawsuit.

### Hartford's Segmentation Practices

68. In November 2012, Hartford introduced a procedure called "segmentation" into its LTD claims administration process.

69. Mr. Cosentino is informed and believes Hartford divides all its disability insurance clients into three different segments.

70. Mr. Cosentino was classified as a segment III claimant.

71. A claimant is classified as segment III if he or she has "medical, occupational and/or financial complexities and an uncertain outcome."

72. In contrast, a claimant is classified as segment I if liability is clear, like when a claimant has a short-term or terminal illness.

73. Segment II is similar to segment III, but less complicated. Claimants classified as segment II have illnesses without an easily predictable trajectory, like segment III, but do not have the medical, occupational, and/or financial complexities of segment III.

74. On information and belief, Hartford uses segmentation to determine which claims will have the least financial liability to Hartford if it unfairly terminates them.

75. On information and belief, Hartford devotes more claims resources to segment III than segment I claims in an effort to manufacture adverse evidence to support a denial of an otherwise valid claim.

76. On information and belief, Hartford relied on a biased IME examiner and a peer reviewer financially motivated to find Mr. Cosentino not disabled because Mr. Cosentino was classified as segment III.

77. Hartford's segmentation practices are akin to institutional bad faith and evince the fact it is unduly influence by a structural conflict of interest.

## COUNT I
### (Recovery of LTD and LWOP Plan Benefits)
### (Defendants Hartford and the Plan)

78. All other paragraphs are incorporated by reference.

79. The Plan is an Employee Welfare Benefits Plan as defined by ERISA, 29 U.S.C. § 1002.

80. The Plan represents LTD and LWOP coverage and a promise to provide LTD and LWOP benefits until Mr. Cosentino is no longer Disabled under the terms of the Plan.

-9-

81. Mr. Cosentino continues to be Disabled from his Occupation or Any Occupation according to the terms of the Plan.

82. Mr. Cosentino has claimed the benefits under the Plan to which he is entitled.

83. Mr. Cosentino reasonably expected that his medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until he reaches his Social Security Normal Retirement Age or until he was no longer Disabled.

84. Despite the coverage of Mr. Cosentino's Disability, Hartford and the Plan improperly terminated his LTD benefits in breach of the Plan and ERISA.

85. Hartford also inappropriately denied LWOP coverage to Mr. Cosentino.

86. Hartford's and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

87. Although the Policy states Hartford has discretion with respect to claims and appeals and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

88. Even if SRP properly delegated discretionary authority to Hartford, in light of Hartford's wholesale and flagrant procedural violations of ERISA, Mr. Cosentino should be entitled to de novo review. *See Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

89. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Cosentino is informed and believes that Hartford makes claims decisions based on the claims resources and financial risk it faces on certain claims.

90. Hartford did not properly consider all of the available evidence when terminating Mr. Cosentino's benefits.

91. Hartford failed to conduct a full and fair review.

92. Hartford misstated medical evidence for its own financial benefit, e.g., it excessively relied on biased medical reviews provided by in-house medical consultants or outside consultants it routinely contracts with through third-party intermediaries.

93. Hartford routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

94. Hartford failed to properly consider the opinions of Mr. Cosentino's treating and examining physicians and providers.

95. Hartford failed to explain why it credited the physician reviewer and examiner over Mr. Cosentino's treating physicians and providers.

96. Upon information and belief, Hartford used in-house reviewers and contract consultants in evaluating Mr. Cosentino's claim because it knew that these reviewers' and consultants' recommendations would be unfavorable for the continuation of Mr. Cosentino's benefits.

97. The peer reviewer and independent examiner arbitrarily reached their opinions based on insufficient evidence or investigation.

98. Hartford intentionally gathered evidence to stack the deck in its favor and against Mr. Cosentino.

99. Hartford relied on findings that constitute "clearly erroneous findings of fact" to deny Mr. Cosentino's benefits.

100. Hartford abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Hartford ignored the inaccuracies or created new reasons for denial.

101. Upon information and belief, Hartford provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

102. In terminating Mr. Cosentino's LTD benefits, Hartford disregarded evidence that Mr. Cosentino's conditions had not changed or improved.

103. Hartford has no evidence that Mr. Cosentino's conditions changed or improved since it determined that he met the definition of Disabled in the LTD and LWOP Policies.

104. Hartford engaged in other procedural irregularities, which it did to serve its own financial best interests.

105. On information and belief, Hartford engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

106. Mr. Cosentino alleges upon information and belief that Hartford has a parsimonious claims handling history.

107. Hartford failed to conduct a "meaningful dialogue" regarding Mr. Cosentino's claim.

108. Under the de novo standard of review, to be entitled to benefits, Mr. Cosentino need only prove by a preponderance of the evidence that he is Disabled.

109. Even under the abuse of discretion standard of review, Hartford abused its discretion, because its decision terminating Mr. Cosentino's disability benefits was arbitrary and capricious and caused or influenced by Hartford's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

110. Mr. Cosentino is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process, and also regarding the effects of Hartford's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Mr. Cosentino's LTD claim.

111. Under the de novo standard of review, Mr. Cosentino is entitled to discovery regarding, among other things, the credibility of Hartford's medical reviews and Hartford's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

112. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Cosentino is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

113. Mr. Cosentino is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the status quo ante before Hartford wrongfully terminated LTD benefits.

114. Pursuant to 29 U.S.C. § 1132(g), Mr. Cosentino is entitled to recover his attorneys' fees and costs incurred herein.

115. Mr. Cosentino is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

## COUNT II
### (Breach of Fiduciary Duty)
### (Hartford and SRP)

116. All other paragraphs are incorporated by reference.

117. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

118. Hartford is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Cosentino.

119. SRP is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Cosentino.

120. Under 29 U.S.C. § 1104(a), Hartford and SRP are required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

121. Under ERISA, which is founded in trust principles, Hartford and SRP are required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

122. In multiple ways throughout the administration of Mr. Cosentino's claim, Hartford and SRP breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

123. Hartford relied on the opinions of biased contract consultants to deny benefits.

124. Hartford ignored, or summarily disregarded, the opinions of Mr. Cosentino's treating providers.

125. Hartford ignored the significant evidence Mr. Cosentino submitted on appeal of his claims, including an objective FCE supporting the conclusion he cannot work.

126. District and Circuit courts have considered functional capacity evaluations to be compelling and probative evidence of Disability. *See Stiltz v. Metropolitan Life Ins. Co.*, 244 Fed. Appx. 260, 264-65 (11th Cir. 2007) ("MetLife's final decision considered both the subjective and the objective evidence in Stiltz's file, and MetLife found that the objective evidence in the [FCE] as the more credible evidence of Stiltz's ability to work."); *see Bari v. Cont'l Cas. Co.*, 02 CIV. 5628 (CBM), 2004 WL 1124685, at *3 (S.D.N.Y. May 20, 2004)

("[FCE] is a procedure designed 'to define an individual's functional abilities or limitations in the context of safe, productive work tasks.'") (quoting Phyllis M. King, et al., A Critical Review of Functional Capacity Evaluations, 78 Physical Therapy 852, 853 (Aug.1998)). *See Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 548 (6th Cir. 2015) ("A [FCE] 'is generally a reliable and objective method of gauging the extent one can complete work-related tasks.'") (*quoting Caesar v. Hartford Life & Acc. Ins. Co.*,464 Fed. Appx. 431, 325 (6th Cir. 2012); *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1046 (8th Cir. 2011); *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010)("Hartford denied [the] claim based specifically on 'the results of [FCE], which indicated that Schexnayder was capable of performing light sedentary work.'"); *Saffon v. Wells Fargo & Co. Long Term Dis. Plan*, 522 F.3d 863 (9th Cir. 2008) (identifying FCE as objective evidence); *Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 F. App'x 971, 977-78 (11th Cir. 2008) (collecting cases) (noting plan administrators "routinely rely on FCEs" to make benefit eligibility decisions); *Buckardt v. Albertson's, Inc.*, 221 Fed. Appx. 730, 736 (10th Cir. 2007); *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir. 2004); *Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 888 (8th Cir. 2002).

127.   Hartford instead relied, arbitrarily and capriciously, on the opinions of a peer review consultant and who never examined or even spoke to Mr. Cosentino, and an independent medical examiner.

128.   Hartford also ignored the favorable Social Security disability determination despite well-established case law showing such determinations must be duly considered. *E.g.*, *Salz v. Standard Ins. Co.*, 380 Fed. Appx. 723, 724, 2010 WL 2171380 at *1(9th Cir. 2010); *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006); *Coleman v. Am. Int'l Group, Inc. Group Benefit Plan*, 87 F. Supp. 3d 1250, 1261 (N.D. Cal. April 9, 2015)(distinguishing *Montour*, but explaining that an insurer is "well-served to acknowledge the [SSA's] disability determination in [the insurer's] denial letter" and explain the insurer's consideration of the SSA award, when the SSA's determination of disability is inconsistent with the carrier's determination); *Hertz v.*

*Hartford Life & Accident Ins. Co.*, 991 F.Supp.2d 1121, 1142-43 (D. Nev. Jan. 10, 2014)(citing *Montour* and stating, "Hartford's failure to explain why it reached a different conclusion than the SSA is yet another factor to consider in reviewing the administrator's decision for abuse of discretion, particularly where, as here, a plan administrator operating with a conflict of interest requires a claimant to apply and then benefits financially from the SSA's disability finding."); *Judd v. Qwest Commc'ns Int'l. Inc.*, 2012 WL 3704703 at *9 (D. Ariz. Aug. 28, 2012)(distinguishing *Montour*, but acknowledging the *Montour* line of cases).

129. Hartford's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty because Hartford's claims handling was discharged imprudently and caused Mr. Cosentino serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

130. Upon information and belief, Hartford routinely denies otherwise compensable segment III claims at or around the test change to avoid setting aside additional reserves. To accomplish this goal, it "investigates" claims for the purpose of creating biased evidence to justify a denial.

131. Upon information and belief, Hartford's arbitrary and capricious claims handling is the direct and proximate result of a companywide effort to improve its group disability loss ratio by denying or terminating more claims.

132. Hartford put Mr. Cosentino on a segmented path that, after significant delays and manipulation, limited Hartford's ultimate liability in paying out benefits. Mr. Cosentino – much like many other claimants of Hartford – simply could not pass Hartford's rigorous "test change" from the Your Occupation period to the Any Occupation period. Hartford focused on "segmenting" the claim and gathering biased evidence, caring less about fairly investigating the claim for liability.

133. To the extent that Hartford's denial of benefits caused Mr. Cosentino harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

134. On information and belief, Hartford instructs and/or incentivizes certain employee(s) to terminate fully-insured LTD claims and appeals based on bias or its financial interests.

135. Mr. Cosentino is informed and believes that Hartford's employees are trained in administering claims in the best interests of Hartford, not Plan participants.

136. Instead of fully and fairly reviewing the medical evidence, Hartford unreasonably denied Mr. Cosentino's claim based on unreliable evidence.

137. Hartford's failure to act prudently and in the best interests of Mr. Cosentino is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Hartford's conduct as it relates to Mr. Cosentino's claim.

138. Mr. Cosentino is informed and believes that Hartford has targeted claims under the Plan, including Mr. Cosentino's, which is a breach of fiduciary duty.

139. SRP breached its fiduciary duties by failing to perform the fiduciary duties imposed by ERISA, including having plan documents that meet the statutory requirement, failing to monitor Hartford's claim handling, failing to insure Hartford performed its duties under the Plan, and failing to take prudent or appropriate corrective action.

140. Based on the facts of this case, Mr. Cosentino has "other equitable relief" available to him in several forms, including but not limited to surcharge, because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mr. Cosentino whole for his losses from Hartford's and SRP's breaching conduct.

141. The Court has broad discretion to fashion appropriate relief to make Mr. Cosentino whole and should mold the relief necessary to protect the rights of the participants.

142. Mr. Cosentino is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

143. He is entitled to enjoin any act or practice by Hartford and SRP that violates ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

144. Hartford was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Mr. Cosentino's benefits for its own profit.

145. Hartford engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

146. SRP failed to perform its fiduciary duties under ERISA and the Plan.

147. Hartford acted with malice and in bad faith against Mr. Cosentino, which constitutes a violation of its fiduciary obligations.

148. ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Cosentino by Hartford's and SRP's breach of fiduciary duty violations.

149. As a direct and proximate result of the breaches of fiduciary duty, Mr. Cosentino suffered actual, significant financial harm and has incurred financial expense.

150. Mr. Cosentino is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

151. Pursuant to 29 U.S.C. § 1132(g), Mr. Cosentino is entitled to recover his attorneys' fees and costs incurred herein.

WHEREFORE, on all claims, Mr. Cosentino prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past LTD and LWOP benefits under the terms of the Plan;

B. Clarifying and determining Mr. Cosentino's rights to future benefits under the terms of the Plan;

C. For any other benefits Mr. Cosentino may be entitled to receive under the Plan due to his disability;

D. All other equitable relief that is proper as a result of Hartford's and SRP's breaches of fiduciary duties;

E.  An award of Mr. Cosentino's attorneys' fees and costs incurred herein;

F.  An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.  For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 2nd day of February 2021.

RONSTADT LAW, PLLC


By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Clayton W. Richards
*Counsel for Plaintiff*